**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

SafeRack, LLC,            )         Civil Action No. 2:17-cv-1613-RMG

           Plaintiff,       )

                         )         **ORDER AND OPINION**

           v.                  )

                         )

Bullard Company,         )

                         )

           Defendant.     )

_____ )

This matter is before the Court on cross-motions for Summary Judgment. For the reasons set forth below, the Court grants in part and denies in part Defendant's Motion for Summary Judgment and grants in part and denies in part Plaintiff's Motion for Summary Judgment.

## I.    Background

Plaintiff SafeRack, LLC ("SafeRack") and Defendant Bullard Company ("Bullard") both produce and sell safe access and loading units, often for use by industries involved in loading and unloading transportation vehicles such as trains, trucks and ships. These safe access and loading units have fall protection equipment, such as safety cages, gates and railings. No later than 2003, SafeRack began selling fall protection equipment that included the color orange. (Dkt. Nos. 50-2 at 3; 50-3.) Bullard, though a 30(b)(6) witness, acknowledged that he had seen SafeRack products with orange on its "standard truck loading, railcar loading, and access platforms, gangways and gates" prior to June 2017.[1] (Dkt. No. 50-14 at 16, 20, 25.) On May 30, 2017, after a three year examination, the United State Patent and Trademark Office ("USPTO") registered SafeRack's

---

[1] Bullard alleges there is a dispute regarding when it first learned of SafeRack's use of orange on equipment. (Dkt. No. 57 at 11 – 12.) However, Bullard identifies no evidence disputing the testimony of its 30(b)(6) witness, and instead only disputes the reason it chose to use orange and when it was actually informed that orange refers to SafeRack. (Dkt. No. 57-10 at 4.)

Design Mark No. 5,211,514. (Dkt. No. 50-4.) The registration included a photo of a gangway:



(*Id.*) The registration further stated that "[t]he color(s) orange is/are claimed as a feature of the mark. The mark consists of the color orange as applied to railings, gates and cages of fall protection equipment. The product configuration depicted in dotted lines is not claimed as a feature of the mark and serves only to show placement of the mark on the goods." (*Id.*) In addition to the registered mark, SafeRack submitted photos of equipment it had manufactured that included the color orange on the railings, gates and cages, a copy of which is included below as an example:



(Dkt. No. 50-21.)

In June 2017, Bullard attended the Independent Liquid Terminals Association ("ILTA") trade show and showcased a work platform and gangway with orange railings and other features. (Dkt. Nos. 49-1 at 8; 50-10 at 36.)

 

(Dkt. Nos. 49-1 at 8; 50-13; 50-16.) On June 12, 2017, SafeRack sent a cease and desist letter to Bullard after Bullard's platform was shown at ILTA. Bullard asserts that while it showcased the units, it never sold any with that configuration. (Dkt. No. 49-1 at 8, 15.) SafeRack presented no evidence that Bullard ever sold a work platform or gangway as showcased at the ILTA.

Instead, both parties agree that since 2015 Bullard has sold at least six[2] mobile access platforms ("MAP") with gray railings, cages, and fall protection with an orange vehicle base.



(Dkt. Nos. 49-1 at 8; 50-1 at 31; 50-22.)

---

[2] SafeRack asserts Bullard sold seven units. (Dkt. No. 50-1 at 31.)

On September 17, 2018, SafeRack and Bullard both filed motions for summary judgment. (Dkt. Nos. 49, 50.) Both responded in opposition to the other parties' motion. (Dkt. Nos. 54, 57.)[3]

## II.    Legal Standard

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine issue of any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, any admissions on file, together with the affidavits, if any, which show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court will construe all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The existence of a mere scintilla of evidence in support of the non-moving party's position is insufficient to withstand a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). However, an issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-movant. *Id.* at 257.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587. "Where the record taken as a whole could not lead a rational trier of fact to

---

[3] Concurrent with this Order and Opinion, the Court issued an Order and Opinion granting SafeRack's motion to exclude Bullard's expert Jill Morton (Dkt. No. 47) and granting Bullard's motion to exclude SafeRack's expert Dr. Eli Seggev (Dkt. No. 48). As the Court will not consider the inadmissible evidence from Jill Morton, the Court denies as moot SafeRack's motion to strike references to Jill Morton in Bullard's motion for summary judgment. (Dkt. No. 53.)

-4-

find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## III. Discussion

SafeRack argues that Bullard's use of orange on "gangways, railings, and gates" at the ILTA in 2017 and Bullard's sale of MAPs infringed on its trademark and trade dress and constituted unfair competition in violation of the Lanham Act and the South Carolina Unfair Trade Practices Act ("SCUTPA"). SafeRack also brought a claim for unjust enrichment. Bullard argues that the use of orange on its equipment was not likely to cause confusion, and presents six affirmative defenses.

As the Fourth Circuit has explained, to establish trademark infringement a plaintiff must prove:

> (1) that it owns a valid mark; (2) that the defendant used the mark 'in commerce' and without plaintiff's authorization; (3) that the defendant used the mark (or an imitation of it) 'in connection with the sale, offering for sale, distribution, or advertising' of goods or services; and (4) that the defendant's use of the mark is likely to confuse customers.

*Rosetta Stone, Ltd. v. Google, Inc.*, 676 F.3d 144, 152 (4th Cir. 2012); *see also* 15 U.S.C. § 1114(1)(a). As explained below, since there are no disputes of material facts regarding all four elements and Bullard presents no meritorious defenses, the Court grants summary judgment for SafeRack on its claim for trademark infringement.

### A. Ownership of Valid Mark

There is no dispute that SafeRack owns a valid trademark to the color orange as applied to railings, gates, and cages of fall protection equipment. Generally, "the party claiming ownership of a mark must be the first to use the mark in the sale of goods. The party claiming ownership must also use the mark as a trademark, that is, the mark must be used to identify the source of the goods to potential customers." *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 400 (4th

Cir. 2009) (internal citation omitted). Furthermore, "[r]egistration grants a presumption of ownership, dating ownership to the filing date of the federal registration application...." *Id.* at 400 n.15 (emphasis omitted); *see also* 15 U.S.C. § 1115(a). Finally, color alone can serve as a trademark where it has acquired secondary meaning. *See Qualitex Co. v. Jacobson Prod. Co.*, 514 U.S. 159, 163 (1995).

Here, SafeRack has a presumption of ownership of its mark dating to June 11, 2014, when its trademark was filed with the USPTO. (Dkt. Nos. 50-4; 50-7.) SafeRack further presented evidence that it sold its first loading rack with orange colored components in September 2003. (Dkt. No. 50-2 at 3; 50-3.) Bullard has presented no evidence to dispute this fact. The record evidence demonstrates that Bullard first showcased orange on the railings of its fall protection equipment in June 2017, after SafeRack's registration was both filed and granted. (Dkt. Nos. 49-1 at 8; 50-25; 50-10 at 36.) SafeRack therefore owns a valid trademark to the color orange as applied to railings, gates, and cages of fall protection equipment.

However, SafeRack has not presented any evidence that it owns a valid trademark to orange appearing anywhere else on its safe access and loading units. To begin with, the presumption applies only to the trademark issued by the USPTO, which is limited to "the color orange as applied to *railings, gates, and cages* of fall protection equipment." (Dkt. No. 50-4) (emphasis added). Furthermore, SafeRack in its motion describes the mark as limited to "orange on specific portions of gangways, railings, gates, and mobile access units-industry ("MAUI")...that SafeRack manufactures and sells." (Dkt. No. 50-1 at 2.) *See also* (Dkt. No. 50-1 at 21; "The vast majority of them have nothing to do with this field—they are not metallic gangways, railings, gates and other fall prevention components of industrial loading and MAUI applications."). Finally, SafeRack has presented no evidence that it has ever used orange on areas of its equipment other

than railings, gates and cages as a mark. All photographs SafeRack has presented includes orange solely on the gangways, railings, cages and gates of its equipment.[4] (Dkt. Nos. 50-11; 50-12; 50-21.) Testimony from SafeRack consumers also confirmed this point. PJ Fjeld-Hansen, a purchaser of SafeRack products, testified that he identified a gangway as a SafeRack product through orange on top railings, midrails and a springcover.[5] (Dkt. No. 50-6 at 3 – 4.) Another consumer, Thomas Hansen, further testified it was orange gangways that identified SafeRack. (Dkt. No. 50-10 at 14.)

Therefore, it is undisputed that SafeRack owns a trademark to the color orange specifically as applied to railings, gates, and cages of fall protection equipment.

## B. Used in Commerce Without Consent

There is no dispute that Bullard used this mark in commerce without consent. Bullard admits that it showcased a work platform and gangway with orange railings and cages at the ILTA in June 2017. (Dkt. Nos. 49-1 at 8; 50-10 at 36.) There is no evidence that Bullard used the mark without consent at any other time. The only other evidence of Bullard using orange on its equipment is its use of orange on the vehicle base of seven MAPs it sold in 2015 and 2016. (Dkt. No. 50-25.) However, the vehicle base of the MAP included no railings, gates, cages, or any other type of fall protection equipment. (Dkt. No. 50-22.) Indeed, the only fall protection equipment on the MAP that included any color, a staircase with railings, was painted yellow. (*Id.*) Therefore, it is undisputed that Bullard used SafeRack's mark in commerce without consent at the ILTA in June 2017 and at no other time.

## C. Offer for Sale or Advertising of Goods and Services

---

[4] Even its MAUI, a product SafeRack alleges Bullard's MAP infringes upon, only uses orange on its railings. (Dkt. No. 50-11.)

[5] Mr. Fjeld-Hansen referred to a spring cover as a "bottom rail."

There is no dispute that Bullard showcased and advertised the work platform and gangway with orange railings and cages at the June 2017 ILTA. The ILTA is an important trade show in Bullard and SafeRack's industry. (Dkt. No. 50-15 at 4.) Therefore, it is undisputed that by showcasing a work platform and gangway with orange railings and cages, Bullard used the mark in connection with the advertising of goods or services.

## D. Likelihood of Confusion

There is no material dispute that Bullard's use of orange on fall protection equipment is likely to cause confusion with consumers. The Fourth Circuit has articulated nine factors relevant to determining likelihood of confusion:

> (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public.

*Rosetta Stone Ltd.*, 676 F.3d at 153. The Court considered each of these factors and, as discussed below, determined there is no material dispute regarding likelihood of confusion.[6] At the outset, the Court notes that this case arose in unusual factual circumstances for a trademark case. Here, the alleged infringing goods, Bullard's work platforms and gangway with orange on the railings, were never sold or distributed and the record evidence indicates that they were only shown at a single tradeshow. (Dkt. No. 49-1 at 8, 15.) Once SafeRack delivered its cease and desist letter after the tradeshow, Bullard did not engage in any further attempts to market the allegedly infringing product until these legal challenges have been decided. (*Id.* at 19.)

> i.    *Strength and Distinctiveness of Mark*

---

[6] Neither party presented any evidence regarding intent, the sophistication of the consumers here, or the quality of Bullard's products.

There is no material dispute that SafeRack has a strong and distinctive mark. It is undisputed that SafeRack uses the mark in its advertising slogan ("Orange. Safety has a new color"), and has used the mark in the marketplace since at least 2003. Furthermore, SafeRack has spent between $925,000 and $2,560,000 each year from 2014 to 2017 advertising products with its orange mark. (Dkt. No. 50-19.) Finally, SafeRack submitted undisputed testimony from multiple consumers that orange on fall protection equipment identified SafeRack products and, until Bullard, no competitors who sold similar equipment in its industry used the color orange on fall protection equipment.[7]  (Dkt. No. No. 50-6 at 3 – 4; 50-8 at 14; 50-10 at 14.)

Bullard does not dispute these facts, and instead argues that while SafeRack may have a distinctive orange mark as shown on the USPTO trademark certificate, SafeRack cannot show strength or distinctiveness for "orange in all of its shades," focusing on the fact that the shade of orange on the trademark registration and SafeRack's equipment differs from the orange used on Bullard's equipment. (Dkt. No. 49-1 at 11 – 13.) However, Bullard, in making its argument, relies on *Campbell Soup Co. v. Armour & Co.*, 175 F.2d 795 (3d Cir. 1949), a case abrogated by the Supreme Court, which denied protection to red and white on soup cans because if Campbell could "monopolize red in all of its shades" and competitors follow suit, "the list of colors will soon run out." This is no longer the law, and instead, the Supreme Court recognized "that color alone, at least sometimes, can meet the basic legal requirements for use as a trademark." *Qualitex Co. v. Jacobson Prod. Co.*, 514 U.S. 159, 166 (1995). Courts also recognize that a color mark does not need to be constrained to a single color and some color variance does not negate a strong mark.

_____

[7] While Bullard, in its response in opposition, claims to dispute certain aspects of the testimony of three consumers, PJ Fjeld-Hansen, Joseph Henderson, Jr., and Thomas Hansen, it does not dispute that testimony relied on by the Court in granting summary judgment. Furthermore, many of the alleged disputes are based on out of context testimony or are irrelevant to the disposition of this case.

*See T-Mobile US, Inc. v. AIO Wireless LLC*, 991 F. Supp. 2d 888, 910 – 11 (S.D. Tex. 2014) (while the "record shows modest variations in shades of magenta" it does not "put[] T–Mobile in the position of seeking protection for such a wide range of magenta shades that it is entitled to no protection at all," and "Aio has not cited persuasive or binding authority that some tolerated color variance precludes secondary meaning.").

Here, there is no dispute SafeRack placed the color orange in a context that seems unusual and distinctive, namely, on railings, cages, gates and other fall protection equipment, and used it continuously in the marketplace. *See Qualitex Co. v. Jacobson Prod. Co.*, 514 U.S. 159, 163, 115 S. Ct. 1300, 1303, 131 L. Ed. 2d 248 (1995) ("customers may come to treat a particular color on a product or its packaging (say, color that in context seems unusual, such as pink on a firm's insulating material or red on the head of a large industrial bolt) as signifying a brand."). There is therefore no dispute that SafeRack has a strong mark.

### ii. *Similarity of Marks*

There is no material dispute that Bullard's use of orange on railings, gates and cages of fall protection equipment, is similar to SafeRack's mark. As demonstrated by the photos of the equipment included above, Bullard's equipment showcased at the 2017 ILTA included orange on the railings, gates and cages of gangways and other safe access equipment, just as SafeRack's similar equipment. (Dkt. Nos. 49-1 at 8; 50-13; 50-16; 50-21.)

Bullard attempts to dispute the similarity of the marks again by focusing on the shade of orange, arguing that the orange used on its equipment was different from the shades of orange on SafeRack's equipment.[8] However, again, the question is whether the marks are similar such to

---

[8] The Court notes that, in addition to SafeRack having no ownership of a mark for orange on a vehicle base, Bullard's use of orange on the MAP is not similar to SafeRack's mark. As noted

cause confusion, not whether the specific shade comports perfectly to prior use. The fact that marks may use different shades of the color does not preclude a finding of similarity. *See Cava Grp., Inc. v. Mezeh-Annapolis*, LLC, No. GJH-14-355, 2016 WL 3632689, at *8 (D. Md. July 7, 2016) ("[defendants] have cited no cases suggesting that a plaintiff's federal registration of one color precludes it from seeking protection of its use of another similar color."); *The Youngstown Sheet & Tube Co.*, 149 U.S.P.Q. (BNA) 656 (P.T.O. Mar. 24, 1966) (finding gold and orange are substantially similar and, when used by both parties in a similar way on their products, were likely to cause confusion). Therefore, there is no dispute that the marks, both in terms of the placement of the orange and the shade of orange used, are similar.[9] (*See* 50-16; 50-21.)

    *iii.   Similarity of Goods*

There is no material dispute that the mark was used on similar goods. Bullard's 30(b)(6) witness acknowledged that the type of equipment Bullard showcased at the 2017 ILTA with orange railings, cages and gates is equipment that directly competes with SafeRack. (Dkt. No. 50-14 at 6.) Therefore, the equipment Bullard showed at the 2017 ILTA is similar to SafeRack's safe access units and equipment for loading and unloading transportation vehicles.[10]

---

above, on the MAP the only orange is on the vehicle base, not on any railings, cages or gates. The only fall protection equipment on the MAP that includes color is a yellow staircase.

[9] Bullard also relies on the report of an expert, Jill Morton, to argue that the shades of orange used by SafeRack and Bullard are "significantly different." However, as noted above, the Court held that Jill Morton's opinions are inadmissible under Fed. R. Evid. 702. Therefore, the Court declines to consider any evidence from Jill Morton on summary judgment as it is inadmissible and not considered under Fed. R. Civ. P. 56(c). The Court also notes that, even if admissible, Ms. Morton's opinion regarding the difference in the shades of orange used by SafeRack and Bullard is irrelevant. As discussed above, a color mark does not need to be confined to a single shade and the question is whether the orange used, regardless of specific shade, is likely to cause confusion as used on Bullard's equipment.

[10] Regarding the similarity of goods, Bullard only argues that its MAP is not similar to goods sold by SafeRack. However, Bullard's use of orange on the MAP does not implicate any of SafeRack's marks.

There is no material dispute that Bullard and SafeRack use similar facilities and advertising. Both Parties sell their products to the same consumers, in the same market, and use similar advertising. Further, Bullard's 30(b)(6) witness acknowledged that its products are marketed towards substantially the same consumers as SafeRack, and listed SafeRack as a competitor. (*Id.* at 5 – 7.) It is also undisputed that both attend the ILTA tradeshow, use personal contacts, catalogues and a website to market their products. (Dkt. Nos. 49-2 at 3; 50-14 at 10 – 11.)

While Bullard does not dispute these facts, it instead asks the Court to focus on the differences in production process between SafeRack and Bullard's equipment rather than the similarity in facilities used to sell the products. However, "when considering the similarity of facilities, courts are trying to determine if confusion is likely based on 'how and to whom the respective goods of the parties are sold,' and the key question is whether 'both products [are] sold in the same 'channels of trade.'" *Rosetta Stone Ltd.*, 676 F.3d at 155. Therefore, the there is no material dispute that SafeRack and Bullard use similar facilities and advertising.

v.    *Actual Confusion*

"Actual confusion can be demonstrated by both anecdotal and survey evidence." *Rosetta Stone Ltd.*, 676 F.3d at 156 *citing George & Co.*, 575 F.3d at 398. "Both types of evidence are relevant, and neither category is necessarily required to prove actual confusion." *Id.* Here, SafeRack presented the evidence of at least one consumer, Thomas Hansen, who stated that when he saw Bullard's products at the 2017 ILTA show, he thought "they are piggy backing off of

SafeRack."[11]  (Dkt. No. 50-10 at 37.)  While evidence of actual confusion is limited since the marketing of the challenged equipment was limited to a single tradeshow, Bullard has failed to present any evidence rebutting even the limited evidence of actual confusion.[12]  Therefore, there is no material dispute on the issue of actual confusion.[13]

### vi.  Likelihood of Confusion Overall

Here, considering the factors, the Court finds that there is no dispute of material fact that Bullard's use of SafeRack's mark created a high likelihood of confusion.  SafeRack has a strong mark.  Indeed, these uses of color, whether orange for SafeRack, or yellow for another competitor, is one of the only ways that companies differentiate themselves in an industry that is otherwise all gray.  (Dkt. No. 50-6 at 7; 50-26.)  Furthermore, there is no material dispute that the marks are incredibly similar, used on exceptionally similar equipment, that both SafeRack and Bullard operate in a specific marketplace and that Bullard uses the same facilities and methods of advertising when selling its safe access and fall protection equipment.

The Court is cognizant that there is only limited evidence of actual confusion since Bullard's marketing of the challenged product was limited.  However, Bullard has identified no admissible evidence rebutting this record evidence.  Moreover, while the fact that Bullard never

---

[11] SafeRack also relied on survey evidence from Dr. Eli Seggev.  As noted above, the Court held that Dr. Seggev's opinions are inadmissible under Fed. R. Evid. 702, and therefore the Court does not consider the survey or Dr. Seggev's opinions on summary judgment.  Fed. R. Civ. P. 56. Additionally, even if Dr. Seggev's survey was admissible, which it is not, it would be irrelevant to confusion surrounding the MAP as he only surveyed usage of orange on certain railings of a gangway used for loading train cars, and not on the use of the MAP.

[12] Bullard allegedly disputes Mr. Hansen's testimony regarding his confusion at the 2017 ILTA, however Bullard focuses exclusively on Mr. Hansen's testimony from elsewhere in his deposition regarding Bullard's use of orange on the MAP, equipment not at issue here.  (Dkt. Nos. 57 at 9; 57-4 at 37 – 40.)

[13] The Court notes that no evidence has been submitted showing any actual confusion in connection with Bullard's sale of the MAP with an orange vehicle base

-13-

sold these items and only displayed them at a single tradeshow may serve to limit SafeRack's damages, Bullard's reticence to sell infringing items and create opportunities for actual confusion cannot be used as a shield when the likelihood of confusion is apparent. In sum, there is no dispute of material fact that Bullard's use of the orange mark created a likelihood of confusion.[14]

Therefore, the Court concludes that there is no dispute of material fact that SafeRack has ownership of an orange color mark on railings, gates, and cages of fall protection equipment, that Bullard used the mark in commerce without authorization when it advertised its safe access and loading equipment with orange railings, gates and cages at the 2017 ILTA, and that this use was likely to cause confusion.

### E. Bullard's Defenses

Bullard presents six defenses to SafeRack's allegations of trademark infringement: the orange color was functional, fair use, SafeRack's mark was not distinctive for all shades of orange, the use of the color orange on fall protection equipment is generic, that SafeRack abandoned the mark, and that SafeRack obtained the registration fraudulently. (Dkt. No. 49-1 at 24; 58 at 2 – 5.) Each affirmative defense is without merit.

### i. Functionality

"[T]he Supreme Court has explained that 'a product feature is functional if it is essential to the use or purpose of the article or if it affects the cost or quality of the article.'" *Rosetta Stone Ltd.*, 676 F.3d at 161 *quoting Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 850 n. 10 (1982). Even where *some* color would be required on a product, a color mark can still be protected by

---

[14] Finally, the Court notes that there was no demonstration of any likelihood of confusion regarding orange on the MAP. SafeRack submitted no evidence that: SafeRack had a strong mark regarding orange on areas other than railings, cages and gates, such as the vehicle base of the MAP; Bullard's use of orange on the MAP was similar, or; there was any actual confusion regarding Bullard's sale of the MAP dating back to 2015.

trademark unless there is a competitive need for the specific color scheme. *Qualitex Co.*, 514 U.S. at 166 ("Although it is important to use some color on press pads to avoid noticeable stains, the court found 'no competitive need in the press pad industry for the green-gold color, since other colors are equally usable.'"). Further, if multiple other colors can serve the same purpose, that weighs against a finding of functionality. *See Moldex-Metric, Inc. v. McKeon Prod., Inc.*, 891 F.3d 878, 887 (9th Cir. 2018) ("evidence that numerous color shades are equally or more visible than its bright green color and would result in the same function of visibility during compliance checks weighs against a finding of functionality….").

Bright orange coloring on signs or equipment may sometimes be used to grab attention and indicate caution, yet there is no indication that the way in which SafeRack uses orange, in a distinctive way on fall protection equipment, is functional. First, Bullard relies extensively on an Occupational Safety and Health Administration ("OSHA") regulation identifying orange as a "safety color," 29 C.F.R. § 1910.145(f). However, the OSHA regulation discusses colors for signs and tags dealing with accident prevention, such as for a "biohazard," or "high voltage" equipment. *Id.* at (f)(2). These definitions do not indicate that the color orange on the railings here is functional. Furthermore, Bullard relies on a publication by the American National Standards Institute ("ANSI"), Z535.1-2017, that identifies a particular shade of orange, allegedly the one used by Bullard, as "safety orange." However, the publication also lists safety colors for red, yellow, green, blue, purple, white, and black, and ANSI gives no indication that those seven colors are the *only* colors that can indicate safety. Finally, Bullard has pointed to no laws, regulations, standards, or admissible evidence indicating that orange is required or even recommended for the railings, cages, gates or other fall protection equipment in the safe access equipment industry. Instead, record evidence demonstrates that many other competitors use metallic gray or other

colors, such as yellow. Therefore, there is no material dispute that SafeRack's orange color mark is nonfunctional.

### ii. Fair Use

Bullard's argument for fair use duplicates its arguments regarding the use of orange as a safety color under OSHA and ANSI recommendations. These arguments fail for the same reasons. Additionally, Bullard argues that at least four other companies, to varying degrees, use the color orange to communicate safety on railings, gates and cages: JLG, WAAG, Werner Co. and Ballymore Company. (Dkt. No. 49-1 at 24 – 26.) "To establish a fair use defense for these [products], [the infringer] must prove that [the products] are used 'fairly and in good faith' only to describe the [product] and that the infringing mark is not used as a trademark." *Shakespeare Co. v. Silstar Corp. of Am.*, 110 F.3d 234, 242 (4th Cir. 1997). Bullard's argument regarding JLG, WAAG, Werner Co. and Ballymore essentially restates Bullard's argument regarding orange as a safety color, and those companies' use of orange does not transform orange into a color that describes safe access equipment in the loading and unloading industry. Indeed, none of those companies were identified as competitors by either SafeRack or Bullard in record evidence, and the pictures submitted by Bullard do not demonstrate that the use of orange on the railings, cages and gates of safe access equipment in their industry has somehow become generic by the use of orange by other companies in other industries. Indeed, the record testimony shows the opposite: that at least some consumers use orange as a signifier for SafeRack in the industry. Therefore, there is no material dispute that Bullard's use of orange did not constitute fair use.

### iii. Generic and Distinctiveness

SafeRack's registration of its mark "is prima facie evidence that the registered term is not generic." *JFJ Toys, Inc. v. Sears Holdings Corp.*, 237 F. Supp. 3d 311, 329 (D. Md. 2017) *citing*

*Glover v. Ampak, Inc.*, 74 F.3d 57, 59 (4th Cir. 1996). Therefore, instead of the test stated in Bullard's motion, Bullard must meet the three part test from *Glover* to show that a mark has become generic, namely, a party must: "(1) identify the class of product...to which use of the mark is relevant; (2) identify the relevant purchasing public of the class of product...; and (3) prove that the primary significance of the mark to the relevant public is to identify the class of product...to which the mark relates." *Glover*, 74 F.3d at 59. Bullard cannot meet this test. Notably, for the third prong, SafeRack has already submitted undisputed testimony from consumers that its use of orange to the purchasing public indicates the company rather than the class of product. (Dkt. No. 50-6 at 7; "I would say...that SafeRack stands out being orange in a world that's gray."); (Dkt. No. 50-10 at 39 – 40; "If it's orange...I'm 95 percent sure that's a SafeRack product."). Bullard's arguments regarding the mark being generic further try to relitigate issues of orange as a color that denotes safety, which the Court already found unpersuasive. Therefore, it is undisputed that SafeRack's mark is not generic.

Regarding distinctiveness, Bullard again argues that SafeRack has not acquired distinctiveness for "every shade of orange across the orange color space." (Dkt. No. 49-1.) Again, though, SafeRack is not limited to the sole shade of orange included in its USPTO registration, and Bullard cannot infringe on SafeRack's trademark even where it uses a slightly different shade of a color. *See Cava Grp., Inc.*, 2016 WL 3632689, at *8; *T-Mobile US, Inc.*, 991 F. Supp. 2d at 911; *The Youngstown Sheet & Tube Co.*, 149 U.S.P.Q. (BNA) 656 (P.T.O. Mar. 24, 1966). Therefore, it is undisputed that SafeRack's mark is distinct.

    *iv.*    *Abandonment*

Bullard's argument regarding abandonment again turns on SafeRack's alleged failure to ever use the specific shade of orange on the Pantone scale that Bullard placed on its safe access

equipment. Again, this argument is unpersuasive. *Id.*; *T-Mobile US, Inc. v. AIO Wireless LLC*, 991 F. Supp. 2d 888, 911 (S.D. Tex. 2014) ("The case law does not support Aio's underlying assumption that once T–Mobile identifies and pursues protection of a particular Pantone color, that color cannot be protected or acquire secondary meaning unless every appearance and use conforms exactly to that color."). Instead, it is SafeRack's use of the color orange "in [a] context [that] seems unusual" and "tying that color to [its] product" that makes the mark protectable, *See Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 227 (2d Cir. 2012), and there is no evidence in the record that SafeRack has abandoned its orange mark as used on its railings, gates, or cages of fall protection equipment. Therefore, it is undisputed that SafeRack did not abandon the orange color mark.

     *v.    Fraud*

Finally, Bullard alleges that SafeRack obtained its registration fraudulently. Bullard's argument has no merit, and instead rests on out of context statements and misstatements of testimony. For instance, Bullard argues that SafeRack misstated that amount of revenue "relat[ed] to the orange color mark." (Dkt. No. 58 at 3.) However, SafeRack's CFO merely acknowledged that there are "component pieces" on some products that "don't have orange." (*Id.*) Simply because some part of a product does not have orange does not prevent SafeRack from counting the sale as related to its orange color mark. Similarly, SafeRack's position has been consistent regarding which of Bullard's products it alleges are infringing on SafeRack's trademark. It is therefore undisputed that the registration was not obtained fraudulently.

Therefore, Bullard is not entitled to summary judgment on any of its affirmative defenses and, because SafeRack met the four part test for trademark infringement, SafeRack is entitled to summary judgment on its Lanham Act trademark infringement claim regarding Bullard's use of

orange on railings, gates and cages. As noted above, Bullard's use of orange on the vehicle base of the MAP did not constitute trademark infringement since SafeRack owned no valid trademark regarding orange on areas of equipment unrelated to fall protection and, regardless, SafeRack could not demonstrate likelihood of confusion.

## F.  Damages

The Lanham Act, under 15 U.S.C. §1117, "authorizes a plaintiff to recover (1) the defendant's profits based simply on proof of the defendant's sales; (2) the plaintiff's damages; (3) court costs; and (4) in exceptional cases, attorneys fees." *Georgia-Pac. Consumer Prod. LP v. von Drehle Corp.*, 781 F.3d 710, 717 (4th Cir. 2015), *as amended* (Apr. 15, 2015). Under § 1117(a), "a plaintiff may be awarded the defendant's profits based only on proof of the defendant's sales, subject to a specific adjustment when necessary to compensate for an inadequate or an excessive award of profits." *Id.* at 721.

SafeRack moves for damages of $1,750,000 based on Bullard's profits from the sale of seven MAP units in 2015 and 2016. (Dkt. No. 50-25.) However, as held previously, Bullard's production and sale of the MAP units did not infringe on SafeRack's trademark. SafeRack did not submit any other evidence demonstrating damages from Bullard's infringement. Therefore, SafeRack's motion for summary judgment regarding actual damages under the Lanham Act is denied.

## G.  Permanent Injunctive Relief

The Lanham Act, 15 U.S.C. § 1116, gives the Court the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office...." 15 U.S.C. § 1116(a). To be granted a permanent injunction, a plaintiff must satisfy the

traditional permanent-injunction analysis. *Mary Kay Inc. v. Ayres*, 827 F. Supp. 2d 584, 595 (D.S.C. 2011). Namely, a plaintiff must demonstrate irreparable harm, inadequacy of purely legal remedies, hardships balancing in its favor, and that the public interest would not be disserved by the injunction. *See PBM Products, LLC v. Mead Johnson & Co.*, 639 F.3d 111, 126 (4th Cir. 2011). The Fourth Circuit has noted that "an injunction is the preferred remedy to insure that future violations will not occur...." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 939 (4th Cir. 1995).

An injunction is clearly proper here. Obvious mark infringement by Bullard would cause irreparable harm to SafeRack. Furthermore, since Bullard never sold any infringing equipment and it instead chose to "await the decision on this lawsuit" before selling the equipment with orange components, purely legal remedies are inadequate and would not prevent Bullard from deciding at some point in the future to sell equipment with orange railings, gates or cages. The hardships balance in SafeRack's favor as its mark would be infringed upon and Bullard has no right to infringe on SafeRack's mark, and the public interest would be served by preventing future consumers from being misled. Therefore, SafeRack is entitled to a permanent injunction against Bullard using the color orange as applied to railings, gates, and cages of fall protection equipment.

### H. Additional Claims

The Court's grant of summary judgment and a permanent injunction on SafeRack's trademark infringement claim under the Lanham Act moots SafeRack's claim for trade dress infringement and unfair competition under § 1125(a). *See Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 468 (4th Cir. 1996) ("because Sara Lee's trade dress claim remains alive only insofar as it might serve as an alternative basis for enjoining Kayser–Roth's further infringing use of the

Leg Looks® mark, our grant of injunctive relief on the ground of trademark infringement effectively moots the trade dress issue.").

SafeRack, however, is entitled to summary judgment on its claim for unfair competition under the SCUTPA. The standard under the SCUTPA is the same as the standard under the Lanham Act, and also focuses on whether the infringement is likely to cause confusion. *See Monster Daddy, LLC v. Monster Cable Prod., Inc.*, No. CIV.A. 6:10-1170-MGL, 2013 WL 5467854, at *7 (D.S.C. Sept. 30, 2013) ("The elements of common law and unfair infringement under South Carolina law are identical to the elements for proving a Lanham Act claim."); *Johnson v. Sosebee*, 397 F. Supp. 2d 706 (D.S.C. 2005) ("standard for liability for trademark infringement under the South Carolina Unfair Trade Practices Act [UTPA], like that of the Lanham Act, is likelihood of consumer confusion."). However, to be actionable under the SCUTPA, the unfair trade practice must have an impact on the public interest. *See Glob. Prot. Corp. v. Halbersberg*, 332 S.C. 149, 156, 503 S.E.2d 483, 487 (Ct. App. 1998). Here, the unfair trade practice, namely Bullard's use of the orange mark at the 2017 ILTA, has an impact on the public since it had a potential for repetition. *See Id.* ("Unfair or deceptive acts or practices have an impact upon the public interest if the acts or practices have the potential for repetition.") (citation omitted). Therefore, for the same reasons discussed regarding SafeRack's trademark infringement claim, it is undisputed that SafeRack is entitled to summary judgment for unfair competition under the SCUTPA. Nonetheless, as above, SafeRack has not demonstrated any "ascertainable loss of money or property" and therefore is not entitled to damages under the SCUTPA. S.C. Code Ann. § 39-5-140.

Finally, Bullard is entitled to summary judgment on SafeRack's claim for unjust enrichment.[15] To make out a claim for unjust enrichment, a plaintiff must establish that there was "(1) a benefit conferred by the plaintiff upon the defendant; (2) realization of that benefit by the defendant; and (3) retention of the benefit by the defendant under circumstances that make it inequitable for him to retain it without paying its value." *Atherton v. Tenet Healthcare Corp.*, No. 2005-UP-362, 2005 WL 7084013, at *6 (S.C. Ct. App. May 25, 2005). Here, SafeRack failed to present any evidence that any benefit was conferred or that Bullard realized any benefit from its use of the mark (such as evidence of sales or customers from of its use of orange at the 2017 ILTA), and Bullard is therefore entitled to summary judgement on SafeRack's claim for unjust enrichment.

## IV.    Conclusion

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant Bullard Company's Motion for Summary Judgment (Dkt. No. 49) and **GRANTS IN PART AND DENIES IN PART** Plaintiff SafeRack LLC's Motion for Summary Judgment (Dkt. No. 50). Defendant Bullard's Motion for Summary Judgment is **GRANTED** as to SafeRack's claim for unjust enrichment. Defendant Bullard's Motion for Summary Judgment is otherwise **DENIED**. Plaintiff SafeRack's Motion for Summary Judgment is **DENIED** as to its request for actual damages and **DENIED AS MOOT** as to its claims for trade dress infringement and unfair competition under § 1125(a) of the Lanham Act. Plaintiff SafeRack's Motion for Summary

---

[15] SafeRack in its memo alleges it included a claim for common law unfair competition. (Dkt. No. 50-1 at 16.) However, the complaint only includes a cause of action for unjust enrichment under the common law, which SafeRack did not discuss in its motion for summary judgment. Regardless, "[t]he elements of common law unfair competition under South Carolina law are identical to the elements for proving a Lanham Act claim." *Secret of the Islands, Inc. v. Hymans Seafood Co. Inc.*, No. 2-17-CV-00342, 2018 WL 1566706 (D.S.C. Mar. 30, 2018).

Judgment is otherwise **GRANTED**. Further, the Court hereby issues the following permanent injunction and **ENJOINS** Defendant Bullard Company, its officers, agents, servants and employees from competing unfairly with SafeRack and from using SafeRack's trademarks in any manner whatsoever that is likely to cause confusion including, but not limited to, using the color orange as applied to the railings, gates and cages of fall protection equipment. The Court **DENIES AS MOOT** SafeRack LLC's motion to strike references to Jill Morton's testimony in Bullard Company's motion for summary judgment. (Dkt. No. 53.)

    **AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

November 27, 2018
Charleston, South Carolina